IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CHASE WHITE, BRANDON FALLEY and ZACH JANICE, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 11-0975-CV-W-ODS ) |
| PASHA DISTRIBUTION CORPORATION d/b/a WIRELESS LIFESTYLE, | ) ) ) ) |
| Defendant. | ) |

ORDER AND OPINION (1) GRANTING DEFENDANT'S MOTION FOR ORDER
ENFORCING SETTLEMENT AGREEMENT AND (2) DENYING DEFENDANT'S
MOTION FOR SANCTIONS

Pending are two motions filed by Defendant. The first seeks enforcement of the parties' settlement agreement with an injunction prohibiting Plaintiff from prosecuting a lawsuit he has filed in the United States District Court for the District of Kansas. The second motion seeks sanctions against Plaintiff or Plaintiff's counsel pursuant to Rule 11, 28 U.S.C. § 1927, or the Court's inherent authority. The former motion (Doc. # 182) is granted, and the latter motion (Doc. # 184) is denied.[1]

I. BACKGROUND

This lawsuit was filed in September 2011. It asserted claims under the Fair Labor Standards Act ("FLSA") and sought certification of a collective action pursuant to 29

---

[1] Plaintiff's Motion to Strike or for Leave to File Surreply (Doc. # 191) is denied. The Court's CM/ECF system indicates the Reply Suggestions were due on October 15, which is when they were filed. The Court declines to punish Defendant for relying on a deadline announced by the Court's computer system – even if that deadline was wrong (which is an issue the Court does not reach). Moreover, the Court would grant leave to file the Reply Suggestions out of time if it were asked. The proposed Surrepely does not add anything new and is therefore not justified.

U.S.C. § 216(b). In February 2012, a second similar suit was filed in this district. In May 2012 the parties reached a global settlement that encompassed not only the two suits pending in this Court but three additional suits filed in California. To effectuate the settlement the parties agreed that the three California cases would be transferred here so that all five suits could be resolved in a single proceeding.

The parties contemplated the settlement would be processed under Rule 23 instead of the FLSA's collective action provisions. In October 2012 the parties filed a Motion for Order of Preliminary Approval of Class Action Settlement. After obtaining additional input from the parties, the Court granted preliminary approval at the end of that month.

According to Defendant, disagreements over the scope of the settlement arose in early January 2013. Attorneys for Named Plaintiff (and Class Representative) Chase White expressed their view that the settlement would not resolve White's separate claim for retaliation he suffered in pursuing this case. Defendant's attorneys disagreed, contending the settlement resolved this claim as well. However, neither party expressed any desire to delay the final hearing (which was set for February 14, 2013) or do anything to resolve the conflict.

Thus, the Court convened the hearing – unaware that there were any disagreements over the settlement's scope. The Court first learned of the possible issue during the hearing but neither party expressed any desire to have the issue actually resolved at that time. Plaintiffs' Motion for Final Approval had mentioned White was not accepting an enhancement award but provided no reason, and the Court raised the issue on its own during the hearing:

THE COURT:    Just a minute. Out of curiosity, Mr. Reavey, why is Mr. White not asking for an enhancement payment?

MR. REAVEY:    Judge, he has a retaliation claim that he wishes to pursue, and this issue was discussed at the mediation that we had. So it's our position that if he does not accept the enhancement payment, then – the release he gives will not release his retaliation claim.

2

| | |
|---|---|
| THE COURT: | Is there an agreement on that issue? |
| MS. KIMBALL: | Not exactly, Your Honor. I mean, there's an agreement that Mr. White is not going to take the enhancement claim. |
| THE COURT: | But the legal effects of that is still up in the air? |
| MS. KIMBALL: | Pardon me? |
| THE COURT: | The legal effect of that is still up in the air? |
| MS. KIMBALL: | Right, his first signing of the release. I guess we'll deal with that if and when he sues on the retaliation claim. |

Tr. at 11-12 (Doc. # 186).[2]

    It may be that the Court should have inquired further. It may even be that the Court should have declined to approve the settlement so long as there was a lingering point of dispute between the parties. However, the issue did not involve the class members, the parties were ably represented, and they appeared perfectly willing to live with their disagreement as to the settlement's effect on White's retaliation claim. Of course, leaving such disagreements unresolved means the peace bargained for may not have been achieved and that the parties effectively agreed to future litigation over the settlement's meaning . . . and of course that is exactly what has happened.

    In August 2013, White filed a suit in the District of Kansas, alleging Defendant violated the FLSA by terminating him for questioning the employment practices that formed the basis for this lawsuit. Defendant learned of the suit and filed the instant motions.

---

[2]Mr. Reavey was counsel for Plaintiffs, and was listed as counsel on White's original Complaint. Ms. Kimball was counsel for Defendant.

II. DISCUSSION

A. Standards

*1. Interpreting the Settlement Agreement*

Paragraph 12(b) of the Settlement Agreement provides that the Court shall have "continuing jurisdiction over the construction, interpretation, implementation, and enforcement of this Agreement in accordance with its terms . . . ." The parties do not clearly agree on what law governs the settlement – but then, they also do not demonstrate the choice of law makes a difference. "In a diversity case, the settlement contract must be construed according to state law," that is, the state where the district court sits. Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999). However, the Court had jurisdiction over the FLSA claims because they are federal causes of action, and the Court had supplemental jurisdiction over the state claims. As stated, however, the parties do not suggest there is a meaningful difference between federal and state law. The Court therefore elects to rely on Missouri law: while the settlement resolved claims arising under other states' laws, the agreement was executed and judicially approved in Missouri.

Settlement agreements are governed by ordinary contract principles. E.g., Chaganti & Assoc., P.C. v. Nowotny, 470 F.3d 1215, 1221 (8th Cir. 2006), cert. denied, 551 U.S. 1131 (2007). The primary objective is to ascertain the intent of the parties. E.g., Parks v. MBNA Am. Bank, 204 S.W.3d 305, 311 (Mo. Ct. App. 2006). As with all contracts, the meaning of a settlement agreement is a question of law, and extrinsic evidence should not be used when the settlement's terms are unambiguous. E.g., Estate of Myers v. Myers, 406 S.W.3d 474, 477 (Mo. Ct. App. 2013).

The Court rejects Defendant's argument that Plaintiff bears the burden of demonstrating his suit is not barred by the settlement. The question is one of law, not of fact – so there is no "burden" to speak of. The cases Defendant cites allocate the burden when a party argues an otherwise-applicable settlement is void or voidable – they do not purport to allocate the burden for demonstrating the meaning of a settlement's terms or

4

identifying which claims have been compromised. It makes sense to place the burden on a party arguing a settlement is void or voidable, but to the extent that Defendant (1) interposes the settlement as a defense and (2) argues for a relief in the form of a court order, any burdens that do exist fall logically on Defendant.

### *2. Sanctions*

"[W]hile Rule 11 and § 19027 overlap to some extent, they sanction different kinds of actions, require the application of disparate standards of proof, permit the sanctioning of different persons, and differ in the procedures that the sanctioning court must follow." Fuqua Homes, Inc. v. Beattiee, 388 F.3d 618, 623 (8th Cir. 2004). "The central purpose of Rule 11 is to deter baseless filings in district court and thus, . . . streamline the administration and procedure of the federal courts." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). "Sanctions may be warranted when a pleading is presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, contains allegations or factual contentions that lack evidentiary support, or contains denials of factual contentions that are not warranted on the evidence." Clark v. United Parcel Serv., Inc., 460 F.3d 1004, 1008 (8th Cir. 2006), cert. denied 549 U.S. 1340 (2007) (internal quotations and citations omitted). By its terms, Rule 11 permits sanctions against "any attorney, law firm, or party that violates the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). 28 U.S.C. § 1927, on the other hand, applies only to an attorney; the statute provides that any attorney who unreasonably and vexatiously "multiplies the proceedings . . . may be required . . . to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." Sanctions under this provision are justified when an attorney's conduct objectively demonstrates intentional or reckless disregard of his or her duties, but care must be taken to insure that sanctions are not used to "dampen the legitimate zeal" of an attorney representing his or her client. Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999).

5

B.  Analysis

1.  *Interpreting the Settlement Agreement*

The two operative provisions are paragraphs 2(b)(i)(3) and 7(c) of the Settlement Agreement.  Paragraph 2(b)(i)(3) provides that Enhancement Awards in the amount of $5,000 will be paid to each of the Class Representatives; White is a Class Representative, and he is not excepted from the receipt of an Enhancement Award.  Paragraph 7(c) states as follows:

> As a condition to obtaining an Enhancement Award, the named Representative Plaintiffs shall also agree to a general release that includes all claims under state or federal law, in tort, common law, or contract, whether pleaded in the Complaint or not, **except** any pending Workers' Compensation claims.

White was a named Representative Plaintiff, his retaliation claim is another claim under state or federal law that existed at the time the Settlement Agreement was executed and approved, and White agreed to the Settlement Agreement.  White's primary argument is that the Settlement Agreement granted him an option: he could execute the release and get $5,000, or he could refuse to execute the release and forego the $5000.  The Court concludes this is a tortured reading of the provision, and the clearer understanding of the Settlement Agreement demonstrates White is incorrect.  Allowing a party to a settlement the option to reject it after it is executed is tantamount to saying there is no agreement in the first place – yet the parties clearly contemplated an agreement.  It is one thing for the Class Members to have the option of accepting or rejecting a settlement – the Due Process Clause demands this.  However, as an actual party and signatory, White agreed to surrender any claims he might have in exchange for the Enhancement Award.

The Settlement Agreement does not say anything about White having the option to accept or reject the Enhancement Award.  White counters that there is nothing obligating him to accept the Enhancement Award, but this is incorrect: paragraph 2(b)(i)(3) specifically provides that each of the named class representatives will receive $5,000.

6

Paragraph 7(c) completes the *quid pro quo* by describing what the named class representatives are giving up in exchange for the aforementioned Enhancement Award. Having reached this agreement, White cannot unilaterally decide he need not comply with his obligations simply because he thwarted Defendant's performance by rejecting the payment.[3]

White attaches some significance to the fact the Court gave its final approval to the settlement while knowing that White was not accepting the $5,000. To say that the Court "was specifically briefed on the exclusion of retaliation claims," Plaintiff's Suggestions at 12, is an overstatement. The Court was not "specifically" briefed on anything, and all the Court knew was that (1) White was not accepting the $5,000 and (2) the parties did not agree as to the legal effect of this action. Neither party expressed its views as to what their views were or why they were correct, and both parties were content to leave the issue unresolved. The Court's subsequent approval of the settlement should not be construed as endorsing either party's view of this matter.

White also contends his execution of the release contemplated by paragraph 7(b) releases only those claims described in paragraph 7(a). White then goes to great lengths to argue these provisions could not lawfully relinquish claims that were not alleged in the Complaint because these provisions provide the mechanism by which unrepresented class members would relinquish claims. The Court need not reach this issue: the present dispute is governed by paragraph 7(c), which addresses disputes between Defendant and the class representatives – none of whom were absent or unrepresented class members. As a named party actually participating in the litigation, White was free to compromise any and all claims he might have had against Defendant, including those not mentioned in the Complaint.

---

[3]White fares no better by characterizing the situation as one in which he did not receive the $5,000. Plaintiff's Suggestions at 6-7. While technically correct, the argument is misleading in that it intimates that Defendant breached the agreement by not paying him. In truth, Plaintiff opted not to accept the payment – but he cannot avoid his contractual obligations in this manner. A simpler example demonstrates White's fallacy. Suppose a person selling a car agreed to sell that car for $5,000. The seller could not later negate the contract and keep the car simply by saying "I now decline to accept your $5,000."

Finally, and alternatively, White argues paragraph 7(c) is vague and the Court should look at extrinsic evidence. The extrinsic evidence offered consists of (1) a Memorandum of Understanding ("MOU") executed after the settlement was reached but before the documents were drafted and (2) various e-mails. The Court rejects White's arguments. First, the Court does not believe paragraph 7(c) is vague: the parties' intent is clear. Second, the MOU does not address the issues addressed in paragraph 7(c); it only addresses the classwide relief that is covered elsewhere (primarily in paragraphs 7(a) and 7(b)) and does not address the Enhancement Awards. Third, the e-mails do not prove anything: read in their entirety, they demonstrate that White and his attorneys believe his right to sue for retaliation is preserved and defendant and its attorneys believe otherwise.

### 2. *Sanctions*

The Court does not believe sanctions are appropriate. The parties had a dispute over the meaning of the Settlement Agreement. The Court's rejection of Plaintiff's arguments does not mean Plaintiff deserves to be sanctioned. The parties could have attempted to resolve the dispute on their own. Either party – including Defendant -- could have asked the Court to resolve the matter earlier. Instead, the parties were content to argue about the issue later. Defendant got what it bargained for, and the Court finds it difficult to discern anything sanctionable in this sequence of events.

### III.   CONCLUSION

Defendant's Motion to Enforce Settlement Agreement is granted. The Court construes the Settlement Agreement as barring Plaintiff's claim for retaliatory discharge

now pending in the District of Kansas, and Plaintiff is enjoined from further prosecution of that suit.   Defendant's Motion for Sanctions is denied.

IT IS SO ORDERED.


DATE: October 31, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT